(Jackson v. Wright.)

---

## JACKSON *against* WRIGHT.

### IN ERROR.

1. In an action for breach of a warranty in the sale of goods, it appeared that the sale was made by A. as the agents of the defendants, and that after the plaintiff discovered the alleged defects in the sale of the goods, A. guaranteed that the goods should prove to be of the first quality, and that he would refund as much as two disinterested persons should certify to be just. An award was made, finding that a certain allowance should be made: *Held,* that A. was nevertheless a competent witness for the defendant.

(Jackson v. Wright.)

2. Goods were sold to the plaintiff by A. as agent and consignee of the defendants, who were manufacturers abroad, on the plaintiff's notes at six, seven, and eight months. The plaintiff discovering certain defects in the goods, refused to give the last note; whereupon A. entered into a guaranty that the goods should prove to be of the first quality, and stipulated to refund as much as two disinterested persons should certify to be just. After this, the amount of the note was paid to the defendants. Two persons were appointed referees, who disagreed and an umpire was appointed, who, with one of the referees, made an award, finding that a certain allowance should be made : *It seems,* that this award was *prima facie* evidence of the extent of the defendant's liability, and that it was a question of fact for the jury, whether the defendant had not ratified the award so as to be operative upon both plaintiff and defendant.

This was a writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case, brought by Peter Wright against Job Jackson and John Jackson, trading under the firm of Job & John Jackson.

On the trial before Judge Jones, on the 25th of February, 1836, it appeared that the plaintiff was a dealer in crockery or China ware, and the defendants manufacturers of the article in England, and that the action was brought to recover damages arising from an alleged breach of contract by the plaintiff, on the purchase of ninety-one crates of ware, in September 1833, from Lewis & Co. the agents and consignees, which was alleged by the plaintiff to have been defective and of inferior quality at the time of the purchase. Notes were to be given by the plaintiff at five, seven and eight months. On the 1st of October, 1833, two notes were given by the plaintiff, amounting to $2,240, leaving a balance of $1,146 13 due by him. It appeared by the evidence, that on opening some of the crates, the ware appeared to be defective in some points, and the plaintiff refused to give the third note. After some discussion, the following guaranty was given by Lewis & Co.

[*602]    *" We do hereby guarantee, that the ware contained in the annexed invoice, shall open equal in quality to that description of J. & J. Jackson's ware called *" firsts;"* and in case of any of it proving to be seconds, or in any way differing from the general quality of J. & J. Jackson's *" firsts,"* we will refund to Peter Wright such claims as two disinterested persons in the crockery trade (one of whom to be appointed by ourselves), may certify to be just.
Philadelphia, November 4th, 1833.            Lewis & Co."

The plaintiff then gave his note for the balance, which was dated the 16th of November, 1833. In pursuance of the guaranty, there was a reference to two persons, who were not able to agree. An umpire was then appointed, who, with one of the

(Jackson v. Wright.)

referees, made the following award, which was dated April 23d, 1834.

"The undersigned having examined eighteen packages of earthenware, marked [I] T. P. [R.], part of an invoice of ninety-one packages sold by Messrs. Lewis & Co., to Mr. P. Wright, and find the same to contain defective ware, not equal to J. & J. Jackson's ware called "firsts"—and certify, that a proportinate allowance on the whole ninety-one packages, for inferior ware, be made by Lewis & Co. to Peter Wright, estimating such allowance at the rate of fifteen per cent. on the defective ware, in the same proportion as that contained in the following eighteen crates."

Here followed a list of the crates, with the proportionate deduction upon each, and the cost of each crate per invoice. The whole allowance reported was £30 12s. 5½d.

The defendants, after giving testimony, offered A. J. Lewis, of the firm of Lewis & Co. as a witness on their part. The plaintiff's counsel objected to his examination, and the Court, after argument, sustained the objection, and the defendant excepted.

The learned judge charged the jury in substance as follows—after stating the nature of the action, and the purchase by the plaintiff.

"Soon after this, some of the crates were opened, it appears, and the plaintiff complained to Mr. Ball of the ware, and was uneasy; and when Mr. Ball called for the third note, he refused to give it; suspecting that the wares would not turn out merchantable. Such is the account which Mr. Ball gives, who has been examined as a witness. The next step in the transaction is the guaranty. It appears by the testimony of Mr. Ball, that the ware was sold as merchantable; he says that they were willing to bear all risks; and for that purpose, Mr. Lewis prepared the guaranty which has been read to you, and Mr. Wright gave the third note, which closed the transaction. The guaranty is dated the 4th of November, 1833. *The last note was [*603] given on the 16th of November, 1833. The interval, therefore, between the sale and the guaranty, was two months, (less three days,) and between the sale and the giving the last note, two months and nine days. During this interval, it is said, several packages of this ware had been examined, and the ware was found to be bad, chipped, crooked, fire-flawed, bleared and crazed. It is contended by the plaintiff, that this intermediate examination of part of the ware, shows what was intended by the guaranty by Lewis & Co.; that it created the uneasiness and dissatisfaction of Mr. Wright, which is spoken of by Mr. Ball; and that it shows what defects were intended by the guaranty from

(Jackson *v.* Wright.)

Lewis & Co. However this may be, it appears by Mr. Ball's testimony, that for some cause Mr. Wright refused to comply with his part of the contract, when called upon for the third note, and that he relinquished his position upon receiving the guaranty from Lewis & Co. Something has been said of the manner in which this guaranty was obtained. I don't know that it is important to inquire into this matter. It appears to have been voluntary on the part of Mr. Lewis; at the time it was given, a large part of the ware was in Mr. Lewis's store, and Mr. Wright had given already his notes to the amount of two-thirds of the invoice. If the goods had been already delivered to Mr. Wright, he would have been advised, probably, to put the Messrs. Jacksons to their action for the balance due them on the sale, and have set up his claim for damage as a defence. But the goods being in the custody of Lewis & Co., if Mr. Wright had taken this ground, Messrs. Lewis doubtless would have thought it their duty to their principals to retain the portion which remained in the store-house, and the notes which had been given, would more than satisfy their demand for the part actually delivered; though it would be their interest to complete the arrangement. I do not see, therefore, that either party was in a situation to enforce harsh terms, and the arrangement which was made by them, was probably equally voluntary and satisfactory. Mr. Ball says, they had sold the goods as merchantable, and were willing to bear all risks; much of the testimony that has been given, is connected with the guaranty, and the views which the parties entertain of the effect of the guaranty upon this controversy. In the guaranty is a clause to this effect, that "in case any of the ware proving to be *seconds,* or in any way different from the general quality of J. & J. Jackson's *firsts,* Lewis & Co. will refund to Peter Wright such claims, as two disinterested persons in the crockery trade, (one of whom to be appointed by themselves,) may certify to be just." In pursuance of this clause, there was a reference to Peter Revoudt and William Tams—they could not agree. David P. Reish was appointed, and he and Mr. Tams agreed, and made an award. The defendants contend, that award is conclusive; that it bars the plaintiff's action, although they are willing *you should give a verdict against them for the sum awarded. The plaintiff contends that this award has no other effect upon this action—that it is wholly inoperative. It will be obvious to you, that if the defendants are correct in their views, there is no occasion to inquire into the merits of the original controversy. If, however, the plaintiff is correct in his views, there is no occasion to consider the award or the evidence connected with it. I will therefore first call your attention to this part of the case. This action, as I have stated,

[*604]

(Jackson v. Wright.)

is brought upon the original contract of sale, made on the 7th of September, 1833. The guaranty of Lewis & Co., on the 4th of November, 1833, was a mere collateral engagement, made by Lewis & Co., accessory to the original contract, but not a part of it. It created a personal liability upon their part. On this ground, Mr. Lewis was not allowed to testify as a witness. This guaranty, therefore, is to be laid out of the question. It is the proper subject of a distinct action against Lewis & Co. Now we come to the reference to Messrs. Revoudt, Tams and Reish: Was this reference made in pursuance of the clause in the guaranty between the Wrights on the one hand, and Messrs. Lewis & Co. on the other? Mr. Ball, if I mistake not, says they were appointed in pursuance of the guaranty. The referees had the guaranty before them, to show the object of their appointment. If, in point of fact, the reference was had undert his clause in the guaranty, it was an affair between Lewis & Co. and the plain- tiff; having respect to their personal liability on their guaranty; by which these defendants were not bound, and from which they can have no benefit. But again, there is no evidence that any authority was given by J. & J. Jackson to Lewis & Co., to refer the controversy between them and Mr. Wright on the original contract; and without such authority, J. & J. Jackson would not be bound. Peter Anderson says, "he called on Mr. Lewis to make a deduction on the goods he had bought. He offered to take them at twenty-five per cent. Mr. Lewis could not give any positive answer. Mr. Jackson was not in town—it was best to let the thing lay till Jackson came in town. I wanted him to make a fair allowance, and he could not till Jackson came in town." It is sufficient to say, that the defendants ought to show, in order to entitle them to set up the award, that they had authorized Lewis & Co. to refer this dispute, and that the refer- ence and award were in fact made between them and the plaintiff. But the award itself purports to ascertain the allowance to be made by Lewis & Co.; and in this respect it coincides with the clause referred to in the guaranty. Having disposed of the guaranty and award, so far as it respects this case, we recur to the original transaction on the 7th of September, 1833. Upon the basis of that transaction, this controversy must be adjusted. Three matters are to be borne in mind; 1st. What was the con- tract between these parties? Having ascertained this, you will inquire, 2nd. *Whether the plaintiff has shown a breach [*605] of it? and if so, 3d. What amount of damages has he sustained? The plaintiff must make out his case to your satis- faction. He cannot ask you to go further than the evidence goes.

The plaintiff alleges, that these ninety-one crates of ware were

(Jackson *v.* Wright.)

sold to him by sample; and that a considerable proportion of the ware was inferior in quality to the sample. A sale by sample is equivalent, in point of law, to an engagement that the bulk of the article shall correspond in quality with the article or parcel exhibited as the sample. And if the article turn out to be inferior in quality, the seller is liable to pay the buyer in damages, the difference between the value of the article sold, and the price paid for it. It is not proper to take into consideration on the one hand, the profit which the buyer might have made on the article, if it had corresponded with the contract, to increase the difference between the actual value and the price paid, because the party has chosen to retain it. Nor, on the other hand, is it proper to inquire into the price at which the buyer disposed of it at private sale, for the purpose of diminishing the damages, when a bad article has been well sold. For a man, by skill and management, may sometimes succeed in putting off a bad article, so as to avoid great loss. The injury consists in the breach of the contract; and the extent of the injury is ascertained by taking the difference between the price, which must be assumed as the value of the article contracted for, and the value of the article delivered."

The remainder of the charge related to the evidence respecting the quality of the ware, &c.

The defendant excepted to this charge, and on the return of the record filed the following specifications of error.

"1. The Court below erred in point of law in rejecting A. J. Lewis as a witness for the defendants, and in subsequently charging the jury that the submission to reference by A. J. Lewis did not relate to the subject-matter of this suit : the Court therefore must have erred, either in the rejection of the said witness, or in the charge to the jury as above referred to.

2. Because the submission and award as entered into between Lewis & Co. and the plaintiff, had express reference to the subject-matter of the present suit, and not only bound Peter Wright, the plaintiff, but the defendants also ; and therefore the judge who tried the cause erred in charging the jury to lay the guaranty, submission and report out of the question, as having no legal validity or effect between the parties.

3. The Court erred in charging the jury, that the said award was not only final and conclusive, but was to be totally disre-
[*606] garded—*whereas, if not legally binding and obligatory, it was nevertheless evidence to show the character and value of the articles embraced in the submission.

4. The Court erred in charging the jury, that the submission and award were unilateral.

5. General errors."

(Jackson v. Wright.)

Mr. *Brashears* and Mr. *D. P. Brown*, for the plaintiffs in error, contended.

1st. That Lewis· ought to have been admitted as a witness; citing 3 Starkie, 1728, *Patterson* v. *Gandasequi*, (15 East, 62.)

2d. That the judge erred in his charge respecting the guaranty, submission and award. Watson on Arbitrations, 9, 10, &c. *Dixon* v. *Morehead*, (Addison's Rep. 216).

Mr. *C. Gilpin* and Mr. *Williams*, for the defendant in error.

1st. The guaranty was a collateral contract; and the award was not obligatory or effective in this action. 2 Kent's Comm. 120; *Johnston* v. *Chapman*, (3 Penn. Rep. 19); *Campbell* v. *Baker*, (2 Watts, 84); *Perit* v. *Pitfield*, (5 Rawle, 166); *Wallace* v. *Fairman*, (4 Watts, 378); Theobald on Sureties, 22; *Matson* v. *Ralph*, (2 T. R. 80); *Barber* v. *Fox*, (1 Starkie's Rep. 270; 2 Eng. Com. Law Rep. 586); *Read* v. *Nash*, 1 Wils. 305); *M'Dowell* v. *Mead*, (5 Binn. 195); *Kirkham* v. *Martyr*, 2 B. & A. 613); *King* v. *Colton*, (3 Campbell, 144); 1 Saunder's Plead. and Evid. 137; *Falconer* v. *Montgomery*, (4 Dall. 232); *Passmore* v. *Pettit*, (2 Dall. 271).

2d. Lewis was properly rejected. *Coates* v. *Roberts*, (4 Rawle, 112); Pothier on Oblig. 209; *Bender* v. *Fromberger*, (4 Dall. 436, in note); *M'Kinney* v. *Crawford*, (8 Serg. & Rawle, 353); *Ford* v. *Keith*, (1 Mass. Rep. 139); *Rudy* v. *Wolf*, (16 Serg. & Rawle, 79); *Finney* v. *Allen*, (1 Penn. Rep. 240); *Whittaker* v. *Smith*, (4 Picker, 83); *Reed* v. *Garvin*, (12 Serg. & Rawle, 100).

The opinion of the Court was delivered by

KENNEDY, J.—The errors assigned seem to present only three questions at most. First, Was A. J. Lewis a competent witness for the defendant below, now the plaintiff in error? Secondly, Was the Court below correct in advising the jury to lay the guaranty and the award of the arbitrators out of view, as having no bearing on the issue between the parties in this action? And, third, Did the Court withdraw, in their charge to the jury, any matters of fact from the decision of the latter, that were material to the issue, and might have been found from the evidence to have existed?

As to the first question. Unless it appeared that A. J. Lewis had a *direct* and *certain* interest in the event of the cause, or an interest in the record, for the purposes of evidence, he ought to have been *admitted by the Court below, as a competent witness. 1 Stark. Ev. 20, 21. Or if it seemed to be [*607] even doubtful, whether he had such an interest or not, still his

evidence ought . to have been received, and referred to the jury, leaving it to them to decide, what credit was due to it, after taking into consideration all the circumstances of the case, and the motives by which he might have been influenced. Ibid. As to a direct and certain interest, it certainly does not appear that he had any in the event of the cause. He was not to gain or lose by the verdict, whatever it might be. Neither am I able to perceive, that the verdict and judgment could impose any new liability upon him ; nor yet extend, diminish or remove any liability previously created. The award of the arbitrators, if good and binding, settled the extent of Lewis's liability to .the plaintiff below ; and the verdict in. this case could not alter this liability under the award, nor change the effect of it. But it is said that the award is not good, because not made by the two arbitrators chosen first, in pursuance of the written submission ; but made by a third person as an umpire, the two first chosen not being able to agree. It is plain however from the evidence, that the umpire was · called in by the parties to the written submission ; and though done verbally, without any agreement being reduced to writing for the purpose, it is in effect as good and binding on the parties, as if it had formed part of the original submission, and been introduced into it. For aught therefore that appears, the award must be considered good and binding upon the parties to the submission, in pursuance of which it was made. Nothing but corruption or partiality on the part of the arbitrators, could be considered sufficient to annul it. But this is not even pretended to have been the case. Nothing therefore but payment or satisfaction of the amount of it, can relieve or discharge Lewis from his liability under it : and it is equally clear that no recovery can.be had in this action, which can in any way increase his liability beyond the amount of the award. Hence the verdict and judgment, as evidence, cannot either afford him relief, or increase his liability. We therefore think, that the Court below erred in rejecting him as a witness for the defendant below.

The two remaining questions being connected with each other, will be .considered together.

From the record, it appears, that the claim of the plaintiff below, is founded upon a breach of a special warranty, alleged by him to have been made by the defendants, in the sale of goods by the latter to the former ; or, in other words, that the goods sold, were represented at the time, by the defendants to the plaintiff, as corresponding with a sample thereof, exhibited by the defendants to the plaintiff, which has failed to be the case; whereby the plaintiff below has been injured and sustained damages which the defendants refuse to make good. On the

(Jackson v. Wright.)

trial, it would appear, that evidence was given by the plaintiff, tending to prove such warranty, and a breach *thereof. And from the evidence given in regard to the engage- [*608] ment made by Lewis & Co., the jury might very well have come to the conclusion, that they guaranteed the special warranty made by the defendants below, to its fullest extent, and nothing beyond it. In short, that they agreed to become sureties to the plaintiff, for the defendants, that the latter would fulfil and perform the warranty made on their part to the plaintiff. It would also appear from the evidence, that the last note given by the plaintiff to the defendants, for the residue of the price of the goods sold and warranted, was given and accepted by the defendants, and the money thereon received by them after the guaranty made by Lewis & Co.; and as it likewise appears, that the plaintiff made some difficulty about giving the note, until he had obtained the guaranty of Lewis & Co., who acted in the transaction generally as the agents of the defendants, the jury, in the absence of other evidence tending to disprove the fact, would have been justified in drawing the inference, that this last note was given by the plaintiff upon the faith of the guaranty of Lewis & Co.; and with this knowledge the defendants having received the note, and the money as it fell due upon it afterwards, thereby approved and confirmed all that was done in this respect by Lewis & Co.; consequently, the defendants would stand precisely in the same relation to both the plaintiff and Lewis & Co. in respect to the guaranty, as if it had been entered into at their previous special instance and request. If such were the facts of the case, then I am inclined to think, that the award was not altogether irrelevant to the issue; but might properly be considered as *prima facie* evidence, though not conclusive, of the extent of the defendants' liability to the plaintiff. And if the amount of the award had been tendered to the plaintiff, and received by him, before this suit was commenced, I do not see how he could maintain it. And even supposing that he had refused to receive the amount upon its being tendered, I am not satisfied but it would have precluded him from recovering more in this action, had the facts been pleaded and the money been brought into Court; because neither multiplicity nor circuity of actions are to be favoured. Under this view of the case, I am rather inclined to think that it ought to have been submitted, as a question of fact, to the jury, to be decided by them, from the evidence, whether the defendants had not, at least, approved and ratified the guaranty, and thus connected themselves with the plaintiff and the award in regard to it; and as the award, therefore, ought to be taken at least as *prima facie* evidence of the

(Jackson *v.* Wright.)

extent of their liability, whether, under all the ·circumstances of the case, they ought to be made liable to the plaintiff for any greater sum.   The judgment must therefore be reversed, and a *venire de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.

Cited by Counsel, 1 Barr, 51.